**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RONALD L. WEBSTER,

     Plaintiff - Appellant,

v.

CHP CORRECTIONAL HEALTH
PARTNERS,

     Defendant - Appellee.

No. 24-1134
(D.C. No. 1:19-CV-02511-RM-KAS)
(D. Colo.)

_____

## ORDER AND JUDGMENT*

_____

Before **McHUGH**, **EID**, and **ROSSMAN**, Circuit Judges.

_____

While he was incarcerated within the Colorado Department of Corrections (CDOC), Ronald Webster injured his hip. He was eventually treated by both CDOC medical staff and outside providers. Mr. Webster filed a *pro se* lawsuit under 42 U.S.C. § 1983 against Defendant CHP Correctional Health Partners (CHP)—a third-party medical claims administrator—alleging CHP's purposeful delay in authorizing his medical

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10th Cir. R. 32.1.

care violated the Eighth Amendment.[1] After the district court appointed counsel for Mr. Webster, the parties engaged in discovery, and CHP moved for summary judgment under Federal Rule of Civil Procedure 56. The district court granted the motion in a comprehensive written order, and Mr. Webster now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I[2]

## A

At the time of the events in this case, Mr. Webster was a 60-year-old inmate incarcerated at CDOC's Fremont Correctional Facility (FCF) in Cañon City, Colorado. In December 2017, Mr. Webster slipped and fell on

---

[1] Mr. Webster's complaint also named as defendants two treatment providers at CDOC—Mr. Daniel Reed and Mr. Jared Geesaman. Mr. Reed and Mr. Geesaman were dismissed and are no longer parties to this case. CHP is the only remaining defendant. We also note, as did the district court, Mr. Geesaman is "spelled 'Geeseman' in various filings[.]" RI.104. We adopt the spelling that appears in the medical records and his counsel's filings.

[2] We derive the facts from the district court order, which recited the facts from the Parties' Statements of Undisputed Material Facts. We recite the facts in the light most favorable to Mr. Webster as the non-movant. *See Markley* v. *U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023) (observing in a summary judgment motion that "we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party" (internal quotation marks and brackets omitted)).

an icy grate at FCF.[3] Over the next few weeks, he developed bruising and "sharp, burning, and constant" pain in his left hip. RII.177 ¶ 32. He requested a medical visit on January 1, 2018. About a week and a half later, on January 12, 2018, he had his first appointment to address the injury with providers at FCF. A nurse examined him and a physician's assistant—Daniel Reed—ordered x-rays. The x-ray confirmed Mr. Webster had no broken bones but revealed "moderate to severe degenerative arthritis of the left hip." RII.178.

Mr. Webster's pain worsened. A month later, in February 2018, he again sought medical help at FCF. At that visit, a nurse practitioner—Mr. Jared Geesaman—advised Mr. Webster to "lose weight, stretch, and exercise." RII.178 ¶ 34. Over the next few months, Mr. Webster's pain persisted, and he repeatedly returned to the medical clinic at FCF complaining about "worsening pain." RII.178.

CDOC medical staff ultimately determined Mr. Webster should be seen by a specialist. Before that could happen, however, CDOC had to obtain approval from CHP, a third-party administrator that contracts with CDOC to provide prior authorization for inmate care outside CDOC's

---

[3] Mr. Webster also had a preexisting knee injury. In 2012, while incarcerated in a different CDOC facility, he sprained his right knee after jumping from a top bunk onto the floor.

internal medical system. CHP is "not a healthcare provider" and "does not provide any healthcare services." RII.166 ¶ 2. CHP's employees include some medical professionals, but they do not "diagnose[]" or "treat" patients, nor do they schedule medical appointments on the patient's behalf. RII.168 ¶ 4.

On July 25, 2018, after CHP authorized the consultation, Mr. Webster met with an orthopedic physician, Dr. Jacob Patterson. Dr. Patterson observed injuries in Mr. Webster's right knee and left hip. Dr. Patterson was most concerned about Mr. Webster's hip. He observed Mr. Webster is "completely disabled" and recommended a "fairly urgent total hip replacement." RII.179.

On August 24, 2018, Dr. Patterson submitted a preauthorization request to CHP for Mr. Webster's surgery. CHP approved the request about a month later, on September 25, 2018. On October 25, 2018, Dr. Patterson realized that, back in August, he had mistakenly asked CHP to approve a total *knee* replacement for Mr. Webster, when he should have requested a total *hip* replacement, and he informed CHP of this error.[4] CHP approved

---

[4] Dr. Patterson's office told CHP about the erroneous knee replacement request via CHP's provider portal. The note in the portal said: "We erroneously put in an auth [sic] request for this patient for the knee, which was approved, but Dr. Patterson at the bottom of his note says that the hip is much more urgent, needs to be done ASAP." RII.129, 173 ¶ 19.

the corrected request on January 7, 2019. Mr. Webster underwent hip replacement surgery that same day.[5] After his surgery, Mr. Webster was "back to normal," but doctors expected he would need a total right knee replacement. RII.177 ¶ 29.

## B

In September 2019, Mr. Webster, proceeding *pro se*, filed a civil rights lawsuit in federal district court under 42 U.S.C. § 1983.[6] As relevant here, he alleged an Eighth Amendment claim against CHP for inadequate medical care, pointing to various delays in the treatment of his hip injury. Mr. Webster then requested the appointment of counsel, which the district court granted.

CHP first moved to dismiss Mr. Webster's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). While that motion was pending, the parties engaged in discovery, and CHP moved for summary judgment under Rule 56. CHP argued Mr. Webster's Eighth Amendment claim against CHP—a *Monell* claim for municipal liability—

---

[5] Mr. Webster said he was informed in November 2018 that he would be having surgery the following month, but he later learned the surgery would be postponed for an unknown reason.

[6] The district court ordered Mr. Webster to file an amended complaint to comply with federal pleadings standards. The amended complaint is the operative pleading.

failed as a matter of law.[7] To recover against CHP, Mr. Webster first had to

show a constitutional violation. But Mr. Webster could point to no evidence

in the summary judgment record, CHP argued, that any individual

employee was deliberately indifferent to his serious medical needs.

The district court agreed and granted summary judgment to CHP.[8] It

understood, in order to find municipal liability against CHP, Mr. Webster

first had to show an underlying constitutional violation by a CHP employee.

Turning to that threshold question, the district court explained, in the

Eighth Amendment context, the "[d]eliberate indifference" standard

"involves both an objective and a subjective component." RII.198 (quoting

*Sealock* v. *Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal

quotation marks omitted)). CHP acknowledged, for purposes of summary

---

[7] "Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants." *Dubbs* v. *Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (footnote omitted); *see Lucas* v. *Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) ("*Monell* has been extended to private entities acting under color of state law, such as medical contractors." (internal quotation marks omitted)). CHP is a private contractor with the State of Colorado and does not dispute it can be held liable under "entity liability principles." Resp. Br. at 20. Accordingly, for purposes of Mr. Webster's *Monell* claim, the applicable law treats CHP as the municipality.

[8] After CHP moved for summary judgment, it acknowledged its Rule 12(b)(6) motion was "superseded by the motion for summary judgment." RII.224. The district court denied CHP's motion to dismiss as moot. RI.15.

judgment, Mr. Webster's "injury satisfies the objective component of his [underlying] Eighth Amendment claim[.]" RI.107. The district court also independently concluded Mr. Webster satisfied the objective component, having "presented sufficient evidence that he suffered severe pain during the delay in his medical treatment[.]" RII.200. But Mr. Webster had "fallen short" on the subjective prong—meaning he could not show any individual employee at CHP knowingly disregarded an excessive risk to his health or safety. RII.200.

The district court acknowledged CHP delayed authorizing Mr. Webster's medical care. But Mr. Webster "makes no offer of proof that any such delay was, in fact, deliberate," the district court explained. RII.201. In other words, even "assum[ing] that the evidence presented suffice[d] to show that CHP *should* have been aware of the excessive risk to Mr. Webster's health or safety," from a delay in treating his hip injury, the "evidence fails to show . . . that any employee of CHP *did know* and *did disregard* such a risk." RII.201. Because Mr. Webster offered no "evidence that would permit a reasonable fact finder to conclude that *anyone at CHP* deliberately disregarded the risk to his health," the district court concluded he failed to meet his burden on summary judgment to show an underlying

constitutional violation—a necessary predicate to a *Monell* claim.[9] RII.202 (emphasis added). On that basis, the district court granted summary judgment to CHP, without considering any of the other *Monell* elements.[10]

This timely appeal followed.

## II

Mr. Webster seeks reversal of the district court's order granting summary judgment on his municipal liability claim against CHP. We first recite the applicable legal standards and then explain why affirmance is required.

---

[9] The district court did not consider whether Mr. Webster had marshaled evidence to support a systemic theory of liability. *See Crowson* v. *Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("[W]here no individual action by a single officer rises to a constitutional violation, a municipality may be held liable where the sum of actions nonetheless violates the plaintiff's constitutional rights."). That makes sense because, as we will explain, Mr. Webster did not pursue a systemic theory in the district court.

[10] CHP also argued summary judgment was warranted because Mr. Webster's complaint did not "state a claim upon which relief [could] be granted"; Mr. Webster had not shown evidence sufficient to establish CHP "caused [his] claimed violation of his constitutional rights"; and Mr. Webster did not present evidence that "a custom, policy or practice of CHP" caused his injury. RI.107–17 (heading format omitted in first quote). Like the district court, we ultimately need not address these reprised arguments because we affirm the grant of summary judgment to CHP for the reason given by the district court. That is, Mr. Webster cannot meet his threshold burden on summary judgment to show, for purposes of *Monell* liability, any CHP employee deprived him of his Eighth Amendment rights.

8

**A**

"We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c)." *Est. of Beauford* v. *Mesa County*, 35 F.4th 1248, 1261 (10th Cir. 2022). That rule states summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thomas* v. *Int'l Bus. Machs.*, 48 F.3d 478, 486 (10th Cir. 1995) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. On appeal, we must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley* v. *Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks omitted).

9

**B**

A *Monell* claim allows plaintiffs to "sue local governing bodies" (or private entities acting under color of state law) "directly under § 1983 for constitutional violations pursuant to a body's policy, practice, or custom." *Quintana* v. *Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020) (citing *Monell* v. *Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)); *see Dubbs*, 336 F.3d at 1216. To advance a *Monell* claim, a plaintiff has to show "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[11] *Est. of Burgaz* v. *Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1189 (10th Cir. 2022) (citing *Quintana*, 973 F.3d at 1034). "[A] plaintiff [has] the fundamental burden of showing a constitutional violation as a *predicate* to *Monell* liability." *Bond* v. *Sheriff of Ottawa Cnty.*, 173 F.4th 1265, 1297 n.22 (10th Cir. 2026) (emphasis added).

At issue here is the Eighth Amendment, which includes "an entitlement to a certain minimum standard of medical care while incarcerated." *See Clark*

---

[11] "[D]eliberate indifference is defined differently for [individual liability purposes] and municipal liability purposes." *Bond*, 173 F.4th at 1292 (internal quotation marks omitted, second brackets in original). "In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it." *Barney* v. *Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998). But we need not reach whether CHP was deliberately indifferent to a constitutional violation because, as we will explain, Mr. Webster has not established a constitutional violation in the first place.

v. *Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). To establish CHP's liability for an Eighth Amendment violation under § 1983, Mr. Webster had to clear two distinct hurdles: *first*, that a CHP employee violated his Eighth Amendment right to adequate medical care, and *second*, that a CHP policy or custom was the moving force behind that constitutional violation. To resolve this appeal, we need not proceed beyond the first step, so we must set out the standards relevant to whether Mr. Webster has shown an underlying constitutional violation.

"A plaintiff states a cognizable Eighth Amendment claim for denial of medical attention if he 'alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Olsen* v. *Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (brackets omitted) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)); *Est. of Beauford*, 35 F.4th at 1262 ("Prison officials violate the Constitution when they act with 'deliberate indifference to an inmate's serious medical needs.'" (quoting *Mata* v. *Saiz*, 427 F.3d 745, 751 (10th Cir. 2005))). "To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a plaintiff must satisfy an objective and subjective component." *Smith* v. *Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021). Only the subjective component is at issue in this appeal.

11

"[T]he focus of the subjective component is the mental state of the defendant with respect to the risk of that harm." *Prince* v. *Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022). The requisite state of mind is "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment [under the Eighth Amendment]." *Id.* at 838. "Whether a prison official had the requisite [state of mind] is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," *id.* at 842, "[b]ecause it is difficult, if not impossible, to prove another person's actual state of mind," *DeSpain* v. *Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).

## C

The question before us is whether Mr. Webster carried his burden at summary judgment on his underlying Eighth Amendment claim. The district court answered no, and so do we.

Mr. Webster makes two arguments in support of reversal. *First*, he contends the district court overlooked that his *Monell* claim was based on a

theory of systemic liability, so he did not have to show any individual CHP employee had the requisite subjective state of mind. *Second*, in the alternative, Mr. Webster insists the summary judgment evidence supported an underlying Eighth Amendment violation by CHP employees. Specifically, Mr. Webster insists the "record permits the inference that CHP's employees were subjectively reckless in delaying authorization of [his] orthopedic referral and surgery." Op. Br. at 53 (heading format omitted). The first argument is waived, and the second argument lacks merit.

**1**

Mr. Webster argues the district court misunderstood his theory of liability. In Mr. Webster's view, he alleged "systemic claims" against CHP, so "[h]e does not need to establish the individual liability of any particular CHP employee to establish *CHP*'s liability." Op. Br. at 46; Reply Br. at 2 ("[B]ecause Mr. Webster alleges systemic injury claims, the law does not condition his recovery on proof of any particular CHP employee's liability." (first citing *Lucas* v. *Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023); then *Crowson* v. *Washington County*, 983 F.3d 1166, 1191–92 (10th Cir. 2020); and then *Garcia* v. *Salt Lake County*, 768 F.2d 303, 306–07 (10th Cir. 1985))). Mr. Webster insists the district court mistakenly "disregarded" his allegations about injuries from certain "widespread

practices" of CHP and thus "applied the wrong legal standard" in resolving his case. Op. Br. at 42–43. We are not persuaded.

We have held that, "while unusual, municipal liability may exist without individual liability: for example, for a systemic failure of medical policies and procedures." *Lucas*, 58 F.4th at 1144; *Burgaz*, 30 F.4th at 1190 ("[T]he combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." (internal quotation marks omitted)); *Crowson*, 983 F.3d at 1191–92 (observing the "systemic" theory is a "limited exception" to the usual requirement for individual unconstitutional action). But Mr. Webster's allegation of legal error proceeds from a false premise: that, before the district court, he litigated his *Monell* claim against CHP under a systemic liability theory.

In the district court, Mr. Webster consistently litigated this case on the theory that CHP is liable under *Monell* based on the deliberate indifference of its employees.[12] To that end, he marshaled the subjective

---

[12] We note Mr. Webster's *pro se* amended complaint—construed liberally—lacks facts to support a *Monell* claim based on systemic violations. *See Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (internal citations and quotation marks omitted)). As CHP's counsel said at oral argument, Mr. Webster could have asked for

component of an Eighth Amendment deliberate indifference claim—the very requirement he now insists does not apply.

In urging reversal, Mr. Webster now says he is challenging "the gross deficiencies in [CHP's] . . . procedures," Op. Br. at 46 (internal quotation marks omitted), specifically its policies or practices of "systematically denying MRIs," Op. Br. at 20 (heading format omitted), and "delaying authorization of urgent procedures," Op. Br. at 36 (heading format omitted). But neither his response to CHP's motion to dismiss nor his opposition to CHP's motion for summary judgment meaningfully developed that theory. *Cf. Lucas*, 58 F.4th at 1144 n.7 (finding the plaintiff raised a systemic injury argument by "the mention of systemic deficiencies in the complaint, various examples, and her responses to the motions to dismiss"). Nor did he direct the district court to *Crowson* or other precedent addressing systemic deficiency theories.[13] Mr. Webster cannot make this argument for the first

---

leave to amend his complaint after counsel was appointed to "plead the systemic claim," Oral Arg. at 26:30–7:35, but he did not do so.

[13] To be sure, in his opposition to summary judgment, Mr. Webster summarily asserted "CHP routinely and frequently rejects requests for MRIs under its policies." RII.16. But he did not point to evidence that would satisfy his burden to "'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Thom* v. *Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (quoting FED. R. CIV. P. 56(e)); *see also Adams* v. *Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a

time on appeal, so we find it waived. *See Robert* v. *Austin*, 72 F.4th 1160, 1165 (10th Cir. 2023) ("Absent extraordinary circumstances, arguments raised for the first time on appeal are waived. This is true whether the newly raised argument is a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented at [the district court]." (internal quotation marks, citation, and brackets omitted)).

**2**

We next consider Mr. Webster's argument that the summary judgment evidence supported an underlying Eighth Amendment violation by CHP employees. In Mr. Webster's view, the CHP employee who reviewed the notes submitted by Dr. Patterson on October 25, 2018—notifying CHP that he had mistakenly requested a knee surgery instead of a hip surgery— would have seen the request "was marked as 'urgent' in CHP's system." Op. Br. at 54 (citing RII.55). From this, Mr. Webster seeks to infer CHP reviewers necessarily knew of "an obvious risk" to his health by "delaying" the authorization of his hip surgery for more than six months—the time

---

motion for summary judgment[.]"). In any event, we agree with CHP that Mr. Webster points to no "facts in the summary judgment record that would establish any actions or omissions related to the treatment of his injuries were directly attributable to a custom, policy or practice of CHP." Resp. Br. at 21. This is true as to CHP's approach to MRI requests and its delay in approving medically necessary requests and surgeries.

16

between July 25, 2018 (the date Dr. Patterson examined Mr. Webster and recommended a "fairly urgent total hip replacement") and January 7, 2019 (the date CHP approved Dr. Patterson's corrected request for a hip replacement surgery). Op. Br. at 54–55; RII.158–59.

Even assuming Mr. Webster has pointed to a delay, we cannot say the evidence at summary judgment satisfies his burden to show an underlying Eighth Amendment violation by anyone at CHP.[14] Recall, Mr. Webster's *Monell* theory is based on an individual CHP employee's violation of his constitutional rights. This implicates, as relevant here, the subjective component of the Eighth Amendment deliberate indifference standard. Mr. Webster must demonstrate a CHP employee was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and also "draw[s] the inference." *Farmer*, 511 U.S. at 837. "[A]bsent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Est. of Beauford*, 35 F.4th at 1271 (quoting *Self* v.

---

[14] At times, Mr. Webster seems to suggest his Eighth Amendment claim stems not only from CHP employees delaying the authorization of his surgery but also delaying the approval of a referral to Dr. Patterson and denying his requests for an MRI. Even if the factual basis of his claim is so construed, Mr. Webster still cannot overcome summary judgment because he has not established the subjective component of the deliberate indifference standard.

*Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (internal quotation marks omitted)).

True, CDOC's Provider Manual states CHP's "decision timeframe[]" for "urgent service requests" is "1 business day," RI.148 (bolding and capitalization omitted); and the record shows Dr. Patterson's first request took about a month to process and his second request took more than two months to process. But the existence of this policy and the fact of a delay does not mean, without more, CHP employees acted with deliberate indifference to Mr. Webster's medical needs.[15] Mr. Webster has identified no other evidence to show there is a jury question on whether an individual CHP employee knew about and disregarded "a substantial risk of serious harm" to him. *Farmer*, 511 U.S. at 837. As CHP puts it, the district court correctly determined "nothing in the record even hints at sufficient facts demonstrating the [requisite] subjective intent from anyone associated with CHP[.]" Resp. Br. at 15.

---

[15] Mr. Webster also points to a list in CDOC's Provider Manual outlining the "supporting information" CHP reviewers typically consider in making a claim decision. RI.148–49. This information includes, among other things, Mr. Webster's medical history and documents related to previous requests and all prior authorization records. Viewing the evidence and drawing reasonable inferences in favor of Mr. Webster, we cannot say CHP employees acted with deliberate indifference just because they had access to Mr. Webster's medical records and provider requests.

18

Mr. Webster has not carried his burden at summary judgment on the subjective component of his Eighth Amendment deliberate indifference claim. Under these circumstances, the district court correctly determined that his failure to show an underlying constitutional violation is fatal to his *Monell* claim against CHP. *See Bond*, 173 F.4th at 1297 n.22.

**III**

We affirm the district court's grant of summary judgment to CHP.

Entered for the Court

Veronica S. Rossman
Circuit Judge